Thank you, Your Honor. May it please the Court, my name is Chris Cobble and I represent the Plaintiff Appellant, Dr. Nash. And, Your Honor, I'd like to focus primarily on the Section 1983 issues. And we believe that the Court erred. There are a lot of issues in this case, but we believe primarily the primary issue in this case is the dismissal of the Section 1983 claims, which we believe were wrongful. Dr. Nash was, we believe, initially wrongfully placed in the Jackson County Mental Health Unit at 2 North. But we believe that his imprisonment in this facility continued to be wrongful after the five judicial day period in which he was required to be released after that five judicial day period. Well, counsel, let me take you and ask you a question about that. Okay. Isn't there a rule in Oregon that the initial five-day period without a hearing can be extended at the request of the investigator for another five days? Well, only if the rule requires that, first of all, that the mental patient has to, first of all, agree to that extension. Second of all, the rule, the statute requires, first of all, the statute requires that under no circumstances can that extension be allowed if the mental patient does not want that extension to be, does not want that extension. That's what you said a moment ago. Excuse me? To agree to it. He has to agree to it. There has to be consent, and that was not the case in this situation. It was very clear, and the record was very clear, that Dr. Nash wanted to be released. In fact, he wanted to be released from the very get-go. He never wanted to be in this place. He didn't want to get in there, and he wanted to get out. He didn't want to get in there, and he wanted to get out. He at first had a lawyer appointed for him. He didn't even want to have a lawyer. He represented himself at the hearing. That was late. That was late scheduled, and the court released him at this hearing. But he never wanted to be in there in the first place, and he never wanted an extension, and he wanted to get out. I think that the primary issue in this case is whether the statute is mandatory as far as his release, if he wants to be released. If he had asked for an extension, there would never be a civil rights issue in this case. But the fact of the matter is he never wanted to be in there, and he never wanted an extension. Well, there was a dispute about whether there was an extension or not. There was some evidence, right, saying that he was equivocal or maybe it was okay to wait until Monday. No, I don't believe there was a dispute on that. In fact, I don't think that the court relied on that issue in ruling whether or not there was a civil rights issue or not. The court decided basically whether or not the statute created a procedural issue or a substantive issue. That's why the court dismissed the Section 1983 claim. The court didn't determine that based upon whether or not there was a dispute as to the issue. If there was a dispute, potentially that could go to the jury. Then that shouldn't have been resolved on summary judgment. So that was not the question. It was whether the five days was procedural or not. Yes. I guess the problem I'm having with the court's analysis on that is it seems that we know that putting an individual into a mental health hold is deprivation of liberty. Obviously, he was detained. He wasn't free to go. Yes. After the fifth day, when the court had not granted an extension, on what basis was he being held? Was there any legal basis for him to be detained any further? No. There was no legal basis for him to be detained. There was no factual basis, we believe, for him to be detained. We believe that, in retrospect, that was based upon his release by the court. There was no legal basis because the statute required him to be released. So he was being detained by State officials without any legal authorization whatsoever? No legal authorization whatsoever. And that's confirmed by State case law. And I cited the case State v. J.D. that confirms that, that you are not authorized to continue to be held after that fifth judicial day. Then I guess I'm having trouble understanding this what's the difference between the procedural and the substantive, if there was, in fact, no procedure that was in place to extend his time. Well, I even disagree with the premise that you're looking at a procedural issue versus a substantive issue. Because, to me, if you're looking at the State, whether it's a procedural law versus a substantive law, the fact of the matter is the State statute that is there is meant to protect those individuals. It's meant to protect them, to give them a right to a hearing. And the reality is if they're not released after that fifth judicial day, when they want to be released, when they're not asking for an extension, there's no remedy except for a Section 1983 remedy. Because the reality is that if they're saying in the hearing that, well, I wasn't released after the fifth judicial day, well, if they are, in fact, mentally ill, they're still going to be held. If they ask for an appeal, the appellate court is going to say, like in State v. J.D., well, yeah, you were wrongfully held. But in this case, Dr. Nash's only remedy is under Section 1983 because of the deprivation of his liberty interest. That is the issue in this case. We have an adverse jury verdict here. Yes, we do. Is the jury verdict capable of being interpreted as saying, yes, you were held an extra day, Dr. Nash, but you suffered no damages? No, because the jury verdict was wrong. The jury verdict form was wrong. Well, wait, wait, wait. On the 1983 claim, my understanding was that the judge just dismissed it on a Rule 50 and it never went to the jury. No. And that all that went to the jury was the statutory claim. Did the 1983 claim? The only claim, yes. No, the only claim that went to the jury was the State law claim. Right. So the 1983 claim never went to the jury, right? No. The Section 1983 claim did not go to the jury. The only claim that went to the jury was the State law claim. And the State law claim, there were no damages awarded because the defense, the immunity defense threshold was not met. And I want to make that clear. The immunity defense threshold, which required, which we believe is another error because the jury, the judge did not give the correct verdict form, required us to prove malice. That is not the correct immunity defense because we are entitled to just prove bad faith or that they were acting without probable cause, which is what we, in fact, argued to the jury. We argued to the jury that Jackson County, on the State claim, the State claim of wrongful imprisonment, essentially, or negligence, that they were acting without probable cause and they were acting, that they were acting in bad faith. We never argued that they were acting maliciously. Correct me if I'm wrong. The jury instruction on this point is proper, but the jury's form uses that one word, malice. Yes. And the argument from the other side is, well, given that the jury instruction was right, the jury instruction form is understandable as a kind of a shorthand back to the instruction. What's your response? That's their argument, but I've been trying. What's your response to that? I try cases a lot. The fact of the matter is, is that juries, when they go through, they read the verdict form. They may read the jury instructions, but when they're going through, they're looking at the verdict form. And what we did when we noticed the verdict form was incorrect, we tried to notify the court that the verdict form was incorrect. And the reality is that that, clearly on the basis of how the jury. But you noticed it, I'll say 11th hour, but. Yes, we did. 11th hour and 45 minutes. Well. I mean, the jury had already been deliberating for how long at this point? Well, they had been deliberating, they had been deliberating on a Friday. The weekend had, there was a weekend, but they hadn't been deliberating on the weekend. And then there was the next day. However, Your Honor, we, as soon as we found out about it, there was plenty of time. We found out about it. You saw the verdict form, correct, before it went, before it goes to the jury? No, we didn't see the verdict form before it went to the jury. Why not? I mean, isn't it ordinary practice that. We saw the verdict form. We saw the verdict form after it went to the jury. Isn't the ordinary practice, I mean. That's the ordinary practice. The ordinary practice is. The ordinary practice is that you get. Don't interrupt me. I'm sorry, Your Honor. I'm sure that you're understanding my question. Yes. I know you can respond to my question. Is the ordinary practice in this district court not to show the jury verdict form to both lawyers before it is given to the jury? I don't know what the ordinary practice in the district court is. This is the first time I've tried a case in front of this particular district judge. But the ordinary practice in cases that I try is that you see the verdict form before it goes to the jury. What happened in this case. You initial it to make sure that you've seen it. Yes. Did you ask to see the jury form before it went to the jury? I did not ask personally to see the verdict form before it went to the jury. However, we had. There was a great deal of discussion as to what occurred before it went to the jury. And then there was a verdict form that was set on counsel table of the verdict that went to the jury. And there was a great deal of assumptions that it was the same verdict form that all the attorneys had talked about. Not the same? It was not the same. And had the one that all the attorneys had, quote, talked about, that one was acceptable? That one was acceptable. And so how do we get the jury verdict form that was actually sent in? We don't know. At least I don't know. I'm making a lot of assumptions that it was just a lot of changes that were made by either the law clerk or the judge that were just different. When did you see the jury form for the first time? I didn't personally review it until the Monday, the next Monday. So they went out on Friday? Yes. The jury form was available to you then? It was available for me to see on that Friday. So you had it in your hand, but you just didn't look at it? I didn't actually look at it. Because you assumed it was the same verdict form that you had approved. Yes. That's true. Okay. But none of those issues had anything to do with the Section 1983 claim. So that's, again, it was very irregular, and there's a lot of things that I could have done, hindsight 2020. Back to the 1983 judgment as a matter of law. So we basically treat this as a summary judgment. I agree. Is there some exception for de minimis? I mean, we're talking, we're not talking five days and they kept them a month. We're talking five days and they have a hearing at 738. I don't think so. I think you have to look at it based upon state law, because you have a lot of cases that look upon different situations. You have, was it not getting a phone call a violation of civil right? Then you have a situation where you have being held for five days is, being held for 50 days is a violation of a civil right. I don't think you can take it, I think it has to be taken on a case-by-case basis, based upon what the statute is trying to protect. In this case, he was being held over the five days. Now I understand. Let me pursue this a little bit more with a slightly different angle, and that is what mens rea, if I can use that word, do you need to show? Is it, as it were, absolute liability irrespective of their state of, the defendant's state of mind? What if they were negligent? Do they have to be deliberate? I mean, what state of mind do you have to show in order to get yourself a 1983 violation on these facts? Well, I think it's clear that you intend to hold them. I understand that. You know the statute. Dr. Eisenhower knew the statute, or Mr. Eisenhower knew about the statute. He testified that he knew about the statute, and he even testified that he knew the statute had been, that he knew the statute had been blown, that he had been held beyond the statutory period. There's a lot of testimony about, well, you know, we have to look about or look at our finances and things like that, but I don't think there's any question in this case that there was a knowledge about the statute. But I don't think there's any question in this case, that the case law that you look at, that a violation of the statute gives rise to the fact that you were held involuntarily, and you were held involuntarily in violation of the state law. But it really is a question of remedy. What kind of a remedy are you going to get? Because that's the question, that's the point of Section 1983, is to give you a remedy in violation of a state law. In this case, which constitutes a violation of a fundamental right, which is your right to be free. Counsel, you said earlier on that for the extension, for the additional five judicial days, it was required that the internee, Dr. Nash, agree. But I don't see that in Section 426.095C. It says the hearing date may be postponed for an additional five judicial days, quote, for good cause, dot, dot, dot, in order to allow preparation for the hearing. That doesn't say it also has to be for the detained individual. The individual may himself request a delay of any length of time to prepare for the hearing. But there was good cause here because there was a witness who was missing. You don't argue against that, do you? Well, I don't believe that that's – I'd have to look. They've never argued any exception to the fact that there could be good cause. But I don't believe that – I believe that the – clearly the defendant has to be part of the – if he's objecting to the fact that he should have his hearing, then – and there's been no extension. Please cite me in any case or any statute that says that the defendant has to agree. There's no – there's no Oregon case law on that. I don't think so. Let me ask you this, though. Did anyone – I'm past my time. That's okay. So long as we've got questions, we're happy to have you stand up there. Okay. Just one quick one. Did anyone move to the court for – to extend for good cause because the court is required to make that ruling? No, not that I – not that I know of. There was no formal motion to extend that time frame. I could be – I could be incorrect, though. Did the court – I might be clarified on that question. Okay. And do you know if the court actually did extend the time frame? Was there any ruling at all on this issue, sua sponte, or – I don't – I don't – I don't believe so, but I could be corrected on that. Okay. Thank you. Why don't we hear from the other side, and we'll give you a chance to respond. I appreciate that, Your Honor. May it please the court, counsel, I'm Mike Jewitt. I represent David Eisenhower in Jackson County. And I want to respond to some of the things you brought up, but first – Are you going to be the – are you going to be the only person arguing? No. Mr. Schwarty is arguing for Rogue River. We're splitting our time. And about how much? How much? I'll take about five and see how it's going. Okay. I think he's willing to be flexible. Okay. Since I got the brunt of the – Okay. Okay. Briefly, just for the sake of the sanity of your law clerks, Chapter 426 is not a very well-drafted chapter. And it's further complicated by something in the reply brief. Counsel said at page 9 and 10, ORS 426.427, the good faith – or the five-day rule is not included in the immunity statute. 427 does not exist. I assume that's a typo. But let's point that out. It doesn't – sure doesn't seem to be in my copy of the statutes at the time. Here are the ones you need to walk through in order to get to where I'm trying to take you. 426.335 sub 6. Hang on. Hang on. Hang on. I want to – Okay. 335 and then – 335 sub 6. That's the good faith rule that applies to David Eisenhower and other subsections to everybody else. This is for the state. You're talking about the state action as opposed to the 1993 action. Yes. 335 sub 6 is the person representing the state's interest, David Eisenhower. That refers you to a range of statutes, one of which is 234 sub 4, a five-day rule. So that is embraced in the good faith exception. That, in turn, 234, takes you to another range of statutes, one of which is 095, and that's the fundamental rule on the commitment hearing, and that's the one, Judge, that has the continuance for good cause. And could you address what opposing counsel said? Maybe he would be corrected. I'm sorry. I'm a little hard of hearing, and I'm talking on top of it. Did anyone move for a good cause extension, or did the court give such an extension either to respond to or otherwise? No. What happened is the practice down there was that the David Eisenhowers that worked for Jackson County called the court and asked for a hearing date. He was going to do Friday, then became aware that the chief of police was not available, went and saw Dr. Nash on Thursday and said, how about Monday? And Dr. Nash, from our view, I think there's a big dispute about this, said fine. Okay. So there's a dispute about whether Dr. Nash agreed or not. Whether he agreed. So that couldn't be decided in this Rule 50, because you have to resolve all of the factual questions in favor of the non-moving parties. Right. So there wasn't you're agreeing that there wasn't any motion was made for an extension, and the court didn't grant one. No. The only involvement of the court was technically to appoint an attorney on Thursday and then to hold the hearing on Monday. So what was the legal authorization then? On what legal basis could the state have held Dr. Nash for that additional day or actually three days? 426-095-1C, a continuance for good cause. But you didn't have one. So how could that be the basis? No, really there wasn't. It's welcome to the mental health world in Jackson County. It sort of bumps along. The notion was Eisenhower understood the Fifth Judicial Day Rule applies, but believes, apparently, if you believe it mistakenly, that Dr. Nash agreed to extend it out to the following Monday. So he accomplished what the court would have. So you granted yourself an extra day, but the court hadn't granted one. The court had none. So you had no legal authorization at all other than, I guess, in Mr. Eisenhower's mind, to hold him for that day or the three days over the weekend? Yes, correct. So with all that, you know, the considerable discretion and the five-day rule and the notion that it can be extended doesn't strike me as the kind of thing to create a liberty interest in the five-day rule. Well, let me ask you this, though, because you're arguing these telephone cases in your briefs, which confused me, because in those cases it was prisoners who have no rights who then the state creates a right to have access to a telephone, and then the question is, is the statute specific enough, clear enough, mandatory enough, so there is a liberty interest. But no state statute has to create the right to be at liberty. I mean, that's a right protected by the Constitution. That's our right. So I'm having trouble understanding how, in the absence of a state law that allows you to hold this individual, you are not violating his civil rights, at least arguably. And I didn't see the applicability of the telephone cases, so maybe you can explain that to me. I will propose in a moment a way to ground that whole issue. But I think the answer is, you're talking about Carlo v. Chino, I think is the phone call case. As I read the statute, the California statute in that case, it was mandatory. There was no extension. There was no way to vindicate that right. You got your phone call, and that's all it was. Right. But the right to the phone in the first place was created by the statute. Correct. Dr. Nash didn't need any statute to create the right not to be held by the state without any authorization. I mean, he just has that right. I think that's a blurring that the plaintiffs are making here. They're blurring two things together. One is the right not to be mentally committed without good cause. I mean, we don't dispute that. Addington v. Texas, that's a well settled. You have the right. That's a fundamental substantive due process right. What they are claiming is not, and we don't dispute that, they are claiming a separate property or liberty interest in a five-day hearing. They're saying apart from whether you have to be found to be mentally ill and examined and have an attorney and have all those procedural rights that are federally derived, as in Addington, you have a separate independent liberty interest in the difference between a hearing on Friday and Monday. Well, doesn't he have a right to be free if there's no state law that allows him to be held? I guess I'm not understanding your analysis. Well, my point is if one says mental commitment involves freedom, that would mean that every statute, procedural, the tiniest little piece of state procedure is necessarily pulled up into 1983. And I don't think that's the law. I think the law says procedural, non-substantive stuff stays down and you have a state remedy for it. You know, I wish, I know the answer to the question because it's not mentioned in any of the briefs here. Are you familiar with the Supreme Court's case, Zinerman v. Bush? I'm sorry, I can't hear you. Are you familiar with the Supreme Court's case, Zinerman v. Church? Yes, I am. I was about to talk about that. But it's not in your brief. It's what? It is not. No, it's not. Or is it in the other side's brief? But it seems to me to cut against you. That is to say, there we had an involuntary commitment under ‑‑ we had a voluntary commitment under Florida law, but with an expiration of time. They kept him longer than they were supposed to keep him. And the Supreme Court, in an opinion by Justice Stevens, says, sounds like a violation of 1983 liberty. Let me talk about an even more fundamental rule. This is one of those. I wish you'd talk, if you know about the case, I wish you'd talk about it in your brief. Yes, well, the reality of these civil rights cases is you're taken into a wilderness of research and sometimes you find your way out of it. I found my way out of it at 2 in the morning Friday. Okay. I got up and looked Saturday morning on Westlaw and I found a case that applies, that I think answers all of these questions. Okay. You don't need to go to post‑deprivation, pre‑deprivation, parrot analysis and all that. Daniels v. Williams says a negligent act by a state actor or a county actor is not actionable under 1983. Now, can you give me the facts of Daniels? That's a prison case, as I recall. I believe it was. It may have been the property case. Maybe I'm thinking of parrot. Parrot is the hobby material. Parrot is the property. Daniels, I can't remember whether it is slipping on the pillow or there's another one. Something like that, yes. But it's ‑‑ But it came as close to a black letter law under 1983 as there is. No negligence. No, I have to say the Supreme Court doesn't quite treat them this way. There's a special little subgroup called prison cases. Yes. There's another group of cases called involuntary commitment or involuntary retention cases. Zinerman is your key case. Well, my point is this. If the focus now was what's left of the case, putting aside the issue of whether Eisenhower had reasonable grounds to hold him for believing he was mentally ill, that's not being appealed. We're only talking about the 5‑day rule. As one of you pointed out, I think it was you, Judge, if Nash had agreed to the 5 or to the setting on Monday, it would have been perfectly legal. Eisenhower believed that he agreed. He went to him on Thursday and said, what about it? His testimony was, Nash said, okay, go for it. I can use the weekend to prepare. Nash had an attorney at that point who could have gone and found a judge on Friday. But what difference does that make? Because the judge ruled on a Rule 50 and he needed to resolve those issues in favor of Nash, and Nash disputes that. So it doesn't matter what a jury could have found on those issues for purposes of determining whether the district court erred on its Rule 50. What I'm talking about is the nature of the claim against Eisenhower was one of negligence. And if you look at the plaintiff's brief, actually his trial brief, on page 20, he said, our claim based on the 5‑day rule is negligence per se. That's an interesting point. Negligence per se sounds as though if you didn't do it, you didn't do it and you're liable. That's a Tory negligence. Our claim is based on a violation. Negligence per se is an odd term. He might have meant, and I might construe that to mean, it's a strict liability statute. You didn't do it, you didn't do it, and you're in trouble. Well, my point is the allegation against Eisenhower was a mens rea of negligence. You were wrong. Dr. Nash didn't want his hearing on Monday. He wanted it on Friday. You were mistaken. There is not a whit of evidence or any claim or allegation that he did so intentionally. Just that you were wrong, Eisenhower. You blew it. You were negligent. That's all they say he did. But you've now moved it from negligent per se to negligence. And I'm not quite sure what they mean by negligent per se. I mean, negligence is either a violation of common law or a violation of a statutory standard. This says, because the verdict was against the weight of the evidence as to defendant's liability under plaintiff's negligence That refers to the state law claims, not to the 1983 claim. I mean, as I read the brief, the 1983 claim was deprivation of liberty. So it's a substantive due process and a procedural due process claim. The negligence per se was there was a violation of the statute and you're not immunized by the immunity statute under Oregon law. That doesn't relate to the 1983 claim. But as the proof came in, and keep in mind, all the evidence was in before those rulings were made. As the proof came in, all that could be said, all that was proved of Eisenhower was that he was mistaken. Not that he acted intentionally or recklessly. Not that the statute was wrong. They conceded in their brief the statute was fine. It was just a random act by a state actor that at most was mistaken in setting the hearing date. If we agree, though, with your opposing counsel that the jury was misinstructed because the verdict form was inaccurate, they never had a chance to rule on that issue. They only were able to say without malice they didn't get to rule on good faith or probable cause. But again, you're leaping ahead to the issue of what the jury ruled. I'm saying the nature of the claim was simple negligence. Eisenhower was mistaken. The nature of the 1983 claim was simple negligence? Well, the 1983, that begs the question. The 1983. No, that doesn't beg the question. No, that is the question I'm asking you. Was the nature of the 1983 claim as he presented it based upon negligence? Yes. The 1983 claim that's before you today was based on negligence in setting the hearing date on the wrong date. And that's what he said. That's what he said. You can respond. You get a chance. So, okay. The only basis for that hearing date in five days is a state statute. They're saying he violated a state statute. Can you help us with the jury form on the state law question because the time is running. I want to make sure. Do you have any insight as to why we end up with a jury form that says only malice when, in fact, the instruction is broader than that and malice wasn't really at issue? What happened was there was a correction to the jury form. The correction that resulted in malice? That doesn't sound like a correction. I don't know. A mistake. That's a mistake. Now, did you provide, were you in agreement with him as to the earlier form that he said was fine? I'm sorry, Your Honor. I couldn't hear. As I understand the story, there was a jury verdict form that both of you saw that was correct, that was acceptable. Yes. But the actual jury verdict form that goes into the jury says only malice. There were last-minute corrections after the jury had just gone out to deliberate, and we talked. And who made those, quote, corrections? Judge Painter had his clerk fix it. And did you see those? Did you know that that change had been made? I did not on Friday. I'm willing to accept that he didn't see it until Tuesday. It was left on council table Friday afternoon. We all went home. I went home and collapsed, and I didn't read it. So the judge doesn't say, hey, here it is, I've made some changes? No. No. But Tuesday morning, he had it at 9.30 or 9.45. If you look in the record, that morning, that very morning, there was a jury question. I talked about it in my brief. One thing I didn't put in the brief is Judge Painter even talked about changing the verdict form in another context. He asked me, misunderstanding what I had said, do you want me to change the verdict form? I said, no, no, I'm talking about the instructions. It was a minor error that's not relevant here. And that was before 10.05. In his reply brief and in his papers, he says, well, we raised it a long time before the jury came back. That's not correct. They didn't do anything about it for four hours. Well, that jury worked and deliberated. Then the jury came back in and they gave the verdict. He pulled them and did not raise any of the problem with the verdict form, did not seek resubmission. The brief said that they were trying to get opposing counsel to stipulate to correcting the jury form, and the opposing counsel, I guess your side, refused to do it. Is that incorrect? I do not recall that. The motion was not filed until 15 minutes before the jury came back in. The entire morning was wasted. And had it been brought to the judge's attention, had he gone and gotten a clerk, not waste time filing it electronically and hope it gets there, go find a clerk, tell the judge, stop the jury deliberation. Let's get a ruling. Let's get it corrected and get it back to them. And I think the case law is clear. That's what you're supposed to do. That's what Rule 49 says. It wasn't preserved. Okay. We have now used all of your co-counsel's time, but we don't want to put him in that position. You'll have something. You'd like to say something, do I suspect? Let's start out giving you seven minutes and we'll see what happens. I would only add that I think Owen Panner knows harmless error when he sees it. Thank you. And I do feel strongly that this case really only proved and alleged negligence, and they said so in their brief. Williams v. Daniels, it's not actionable. Thank you. Thank you. A police court counsel. Your Honors, I'm not sure if I'll need the full seven minutes. I'm Joe Schwarty. I represent Ken Lewis, the Chief of Police for the City of Rogue River. Carl Lehman, who was a police officer for the City of Rogue River, or the Rogue River Police Department, and also the City of Rogue River. First of all, with regard to the defective verdict form, my recollection is that we did receive a verdict form late on Friday. This was Memorial Day weekend, so we were not going to reconvene until Tuesday. So the verdict form that went to the jury was distributed to counsel on Friday evening, and apparently none of the counsel caught the difference in the questions until sometime Tuesday. And according to your recollection, the judge didn't say, you might notice that I've changed the jury verdict form from what it was the last time you saw it? That's correct, Your Honor. Okay. Okay. Now, with regard to that verdict form, we agree, or we join in with the county's arguments, that the plaintiff appellant did not preserve any error to the alleged defective verdict form. And furthermore, with regard to the Rogue River defendants, we don't believe that any error in the verdict form affects them at all. Question number eight talks about whether the city inflicted intentional emotional distress, and the jury was to answer yes or no. If they answered no, then they were to skip to question 11. Question nine is the one that is the question that's in dispute here. It talks about malice and left out probable cause and good faith. So any defect, if there is any, in a verdict form does not affect the city of Rogue River. With regard to augmenting some of the other arguments in the brief, there was the prior ruling that limited some of the evidence. The standard for review is abuse of discretion, and the error has to be prejudicial. There was a lot of evidence that plaintiffs wanted to get in, dealing with parties that were not even a part of this lawsuit. So, for example, we would have brought in Mr. Smith to talk about the DUI that he got that he felt was unjust by the chief of police. Judge Panner ruled and stated that embarking on totally irrelevant issues that could go on for days or weeks without any real benefit, that would confuse the real issues of this case. Could I ask you about the defamation claim? Yes. I looked at the cases for the application of the absolute immunity, and it was the chief of police, the police sergeant, and a couple of mayors were the ones that I saw. I didn't see any case indicating that just regular police officers, line police officers were covered by absolute immunity. And are there any that you're aware of, or does Mr. Lehman have some executive role in the police department, or is he just an ordinary police officer? Your Honor, I'm not aware of any case law that would give the absolute immunity to just regular patrol officers, nor did Officer Lehman have any type of executive function in the police department. What we alleged in our affirmative defense was immunity, and statutory immunity specifically. And Judge Panner did cite ORS 30.265, which gave the Rogue River Police immunity when they conduct their official functions, and we believe that that's what the immunity is based on. So was Judge Panner extending the law in applying this to Mr. Lehman? I don't know if he was extending the law, Your Honor, or whether he shouldn't have used absolute before immunity. I think if he just would have said they were immune due to. Under that. So under that statute, there have been cases where police officers were granted immunity? Yes, for taking in their official duties. Yes, Your Honor. One of the arguments was regarding what the Bunnell claims. In this case, the individual police officers were not found to be violated any of the plaintiff's constitutional rights, and therefore the city cannot be held under Bunnell because the individuals were not found liable. And then finally, Your Honors, with regard to the argument that the verdict was unjustifiable and against the way of the evidence, Judge Panner felt that there was adequate evidence to support the jury verdict. Furthermore, even before this went to trial, Mercy Medical Center, which was another named defendant, was let out in motion for summary judgment. In that order, Judge Panner wrote that he found that it was clear that Dr. Nash did need emergency mental health care. And furthermore, Judge Panner wrote that witness testimony offered by a defendant was not obviously discredited testimony, and the jury was free to believe or disbelieve the testimony offered by both sides. That's all I have, Your Honors, unless you have any questions. No. Thank you. Thank you. Mr. Cowbell, would you like two minutes? Thank you, Your Honor. Two minutes is fine. Just to respond to a couple issues by Mr. Jewett, we never argued anything specific on the Section 1983 claims as to negligence or anything like that. We talked about liability in our briefing. In fact, I think there's a confusion, again, as to the issue of the state law claims and the Section 1983 claims, because the jury found in our favor on the state law claims in relation to the immunity defenses, we didn't get any damages because of the immunity defense issue. But clearly we're arguing that there was a deprivation of Dr. Nash's constitutional rights. That is the issue that gets us to the Section 1983 claim. The intentionality of it is the fact that he was intentionally held. That's the issue. Even counsel admits that Mr. Eisenhower knew about the statute. Clearly we have an admission here is that there was no request for a continuance. The fact of the matter is that they knowingly scheduled the hearing for a later date. In fact, the reason why the hearing was scheduled later, in fact, I'm remembering this, is because the police chief was on a hunting vacation, I believe. So that is the type of liability we're talking about here. And I think our briefing is very clear on that point. So if there's any other questions, I will go ahead and rest on my briefs on the remaining issues. Thank you, Your Honor. I'll submit. Thank you, both sides. Nash v. Lewis is now submitted for decision. The last argument case this morning, United States v. and I'm not sure whether to pronounce Boots or Butts.
judges: Fletcher W. , Bea, Ikuta